IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MCGINNESS ENERGY COMPANY, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> INDEPENDENT TUBULAR ) <br> CORPORATION, d/b/a ITC PIPE, ) <br> ) <br> Defendant/ ) <br> Third-Party Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BOLY PIPE CO., LTD; and ) <br> JOL TUBULAR, INC., ) <br> ) <br> Third-Party ) <br> Defendants. ) <br>_____) | CIVIL ACTION <br><br> No. 25-1076-KHV |

**MEMORANDUM AND ORDER AND ORDER TO SHOW CAUSE**

On February 25, 2025, in the District Court of Barber County, Kansas, plaintiff McGinness Energy Company, Inc. filed suit against Independent Tubular Corporation ("ITC"), alleging that ITC breached its contract and warranty to plaintiff by suppling faulty casing pipe. On April 23, 2025, ITC removed the case to federal court. See Notice of Removal (Doc. #1). ITC later filed a third-party complaint demanding indemnity from Boly Pipe, Ltd. and JOL Tubular, Inc., which had manufactured and supplied the pipe to Commercial Steel Products, LLC, which in turn had supplied it to ITC. This matter is before the Court on Third-Party Defendant JOL Tubular Inc.'s Motion To Dismiss (Doc. #48) filed September 10, 2025. For reasons stated below, the Court conditionally sustains JOL's motion as to personal jurisdiction and overrules it as to subject matter jurisdiction.

**Legal Standard**

JOL asserts that the Court should dismiss plaintiff's claims under Rules 12(b)(1), 12(b)(2) and 12(b)(6), Fed. R. Civ. P., because (1) the Court lacks subject matter jurisdiction, (2) the Court lacks personal jurisdiction over JOL and (3) ITC's complaint does not state a claim on which relief can be granted.

When defendant seeks dismissal under Rule 12(b)(1) or 12(b)(2) and 12(b)(6) in the alternative, the Court must first decide the jurisdictional challenges because the latter challenge will be moot if the Court lacks jurisdiction. See Creamer v. Gildemeister, No. 15-4871-KHV, 2015 WL 6828186, at *2 (D. Kan. Nov. 6, 2015). Dismissal under Rule 12(b)(1) is appropriate when the Court lacks subject matter jurisdiction over a claim for relief. The party asserting jurisdiction has the burden of establishing subject matter jurisdiction. Id. (citing Port City Props. v. Union Pac. R.R. Co., 518 F.3d 1186, 1189 (10th Cir. 2008)).

Plaintiff bears the burden of establishing jurisdiction and at this stage of the litigation, only needs to make a prima facie showing. See Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1069–70 (10th Cir. 2008). At this stage, the burden on plaintiff is light. See Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995). To the extent that defendant's affidavits do not controvert the well-pleaded allegations of the complaint, the Court must accept plaintiff's allegations as true. See id. at 1505. If defendant sufficiently challenges the jurisdictional allegations, however, plaintiff must support them with competent proof. Pytlik v. Prof'l Res., Ltd., 887 F.2d 1371, 1376 (10th Cir. 1989). Plaintiff may do so by affidavit or other written materials which demonstrate facts that—if true—would support jurisdiction. TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd., 488 F.3d 1282, 1286 (10th Cir. 2007). The Court resolves any factual disputes in favor of plaintiff. Wenz, 55 F.3d at 1505.

Because the Court lacks personal jurisdiction for reasons discussed below, the Court does not reach the Rule 12(b)(6) arguments.

## Factual Background

The relevant facts are as follows:

Plaintiff McGinness Energy Company is a Kansas corporation.

Commercial Steel Products, LLC ("CSP") is a Texas corporation which distributes pipes nationwide. On December 28, 2023, it purchased casing pipe from JOL, a Texas corporation with its principal place of business in Texas. The parties agreed that Boly Pipe Co. would manufacture the pipe in Thailand and deliver it to CSP in Texas. In January of 2024, CSP sold the pipe to ITC, an Oklahoma corporation with its principal place of business in Oklahoma. ITC sold the pipe to plaintiff and CSP delivered it to plaintiff in Kansas, where it allegedly failed due to a defect.

JOL imports and distributes tubular goods within the State of Texas. Boly Pipe is a Taiwan corporation with its principal place of business in Thailand. Boly Pipe's web site describes JOL as its "Houston Branch," but the exact nature of the relationship is unclear.

In this action, plaintiff sues ITC, its direct supplier, for breach of contract and warranty. CSP, which supplied the faulty pipe to ITC, is not a party to this case. On June 5, 2025, five months after plaintiff filed this suit, CSP assigned to ITC "(to the fullest extent assignable), all of [its] rights under the warranties of the vendor [JOL] or manufacturer [Boly Pipe] that supplied the goods." Email from Cameron Kirkpatrick (CSP) To Tyler Allred (ITC) (Doc #53-1). In bringing its third-party indemnity claim against Boly Pipe and JOL, ITC relies on this assignment.

According to the sworn Declaration Of Jianyang Zhou In Support Of JOL Tubular, Inc.'s Motion To Dismiss (Doc #49-1) filed September 10, 2025, the Purchase Order between CSP and JOL did not allow assignment without prior written consent from both CSP and JOL, and JOL

never consented for CSP to assign its Purchase Order to ITC or anyone else. See Memorandum Of Law In Support Of Third-Party Defendant JOL Tubular Inc.'s Motion to Dismiss (Doc. #49) filed September 10, 2025. Zhou declares that he is the Marketing Manager of JOL, has personal knowledge of the facts declared and handled the account relevant to this lawsuit. He also declares that JOL has not marketed goods to, sold goods in, or shipped goods to Kansas, has not had any contacts with Kansas or held an office in the State of Kansas.

On October 1, 2025, ITC accessed a LinkedIn account that purports to belong to Zhou. Screen shots of the account list Zhou's employment dates in Chinese, which ITC translates to say that Zhou worked as "Supply and Marketing Director" from October of 2019 to February of 2023, then "Sales Director" of Boly Pipe from January of 2023 to the present. See Third-Party Plaintiff ITC's Response To Third-Party Defendant JOL's Motion To Dismiss (Doc. #53) at 9–10. The main title at the top of Zhou's page reads "Marketing Manager at JOL Group." Id.

## Analysis

JOL argues that it is entitled to dismissal of ITC's indemnity claims because under Rule 12(b)(1) the Court lacks subject matter jurisdiction, under Rule 12(b)(2) the Court lacks personal jurisdiction over JOL and under Rule 12(b)(6) ITC fails to state a claim. A court without jurisdiction over the parties cannot render a valid judgment. See OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1090 (10th Cir. 1998). Accordingly, before addressing the merits, the Court must determine whether it has subject matter jurisdiction over these claims and personal jurisdiction over JOL. See id.; see also First Magnus Financial Corp. v. Star Equity Funding, LLC, No. 06-2426-JWL, 2007 WL 635312, at *4 (D. Kan. Feb. 27, 2007) (not addressing merits of Rule 12(b)(6) motion because court lacked personal jurisdiction).

**I.      12(b)(1) Subject Matter Jurisdiction**

JOL argues that the Court lacks subject matter jurisdiction because (1) ITC does not have standing to sue and (2) ITC's claim is not ripe. ITC responds that it does have standing through privity of contract and that its indemnification claim is ripe.

The concept of constitutional standing is derived from Article III of the U.S. Constitution, which limits the exercise of the federal judicial power to cases and controversies. U.S. Const. art. III, § 2. To satisfy Article III's standing requirements, plaintiff must show that (1) it has suffered an "injury in fact" that is concrete and particularized and actual or imminent, (2) the injury is fairly traceable to the challenged action of defendant and (3) it is likely, as opposed to merely speculative, that a favorable decision will redress the injury. Parks v. Kiewel, No. 15-1196-JTM, 2015 WL 7295457, at *6 (D. Kan. Nov. 18, 2015). The elements of constitutional standing are not mere pleading requirements, but an indispensable part of plaintiff's case. Utah v. Babbitt, 137 F.3d 1193, 1204 (10th Cir.1998) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)). Thus, plaintiffs and third-party plaintiffs must support each element in the same way as any other matter on which they bear the burden of proof, i.e. with the manner and degree of evidence required at each successive stage of litigation. See Lujan, 504 U.S. at 561. At the pleading stage, general factual allegations of injury resulting from defendant's conduct may suffice.

Rule 12(b)(1) motions generally take the form of facial attacks on the complaint or factual attacks on the accuracy of its allegations. See Holt v. United States, 46 F.3d 1000, 1002–03 (10th Cir.1995) (citing Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir.1990)). Regarding factual challenges, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. See Holt, 46 F.3d at 1003.

JOL makes a factual attack on ITC's claim that it has a contractual right of indemnity. When reviewing a factual attack on subject matter jurisdiction, the Court may not presume the truthfulness of plaintiff's factual allegations. See id. The Court has wide discretion to allow affidavits, other documents and/or a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). See id. In such instances, the Court may refer to evidence outside the pleadings without converting the motion to a Rule 56 motion. See id. Typically, for plaintiff to have standing to sue on a contract, plaintiff and defendant must be in privity with respect to the contract or plaintiff must be an intended third-party beneficiary. See e.g., Stewart v. Mitchell Transp., Inc., 197 F. Supp. 2d 1310, 1314 (D. Kan. 2002), Pro. Lens Plan, Inc. v. Polaris Leasing Corp., 234 Kan. 742, 745, 675 P.2d 887, 891 (1984).

Kansas recognizes three types of indemnity claims: (1) express contractual indemnity, (2) implied contractual indemnity where one has been compelled to pay what another party ought to pay and (3) comparative implied indemnity where one of multiple tortfeasors pays another's share of liability. Poindexter v. Morse Chevrolet, Inc., 171 P.3d 285 (Table), 2007 WL 4246860, at *3 (Kan. Ct. App. 2007); see Schaefer v. Horizon Bldg. Corp., 26 Kan. App. 2d 401, 403, 985 P.2d 723, 725 (1999) (comparative implied indemnity); Haysville U.S.D. No. 261 v. GAF Corp., 233 Kan. 635, 641–42, 666 P.2d 192, 198–99 (1983) (express and implied contractual indemnity).

Here, ITC's third-party complaint does not specify which type of indemnity it seeks. Therefore, the Court analyzes ITC's indemnity claims under all three theories to determine whether it alleges an injury in fact that is fairly traceable to JOL.

    A.    Express Indemnification Claim

ITC's complaint alleges that CSP assigned to ITC its warranty rights against JOL, and that it is therefore entitled to indemnity under the Purchase Order between CSP and JOL. Third-Party

Complaint (Doc. #32) at ¶ 28 filed July 15, 2025. JOL makes a factual attack on ITC's jurisdictional allegation. JOL claims that the CSP assignment was invalid, that JOL therefore has no contractual obligation to indemnify ITC and as a result ITC does not allege an injury in fact. It also alleges that ITC's demand for indemnification does not allege injury which is concrete or immediate enough to satisfy Article III standing. At this stage in the litigation, the Court accepts ITC's allegations that CSP assigned to it all warranty rights against JOL which were assignable. However, because JOL raises a factual attack on subject matter jurisdiction, the Court goes beyond the complaint and considers JOL's declaration and documents to resolve disputed jurisdictional facts. Here, the Purchase Order from CSP to JOL was not assignable without the approval of both parties.[1] Therefore, JOL has sufficiently challenged ITC's allegation that it has suffered an injury in fact which is traceable to JOL. Thus, ITC must support its allegation with competent proof of supporting facts. See Pytlik v. Prof'l Res., Ltd., 887 F.2d 1371, 1376 (10th Cir. 1989).

ITC does not directly refute Zhou's sworn statement that CSP lacked authority to assign its warranty rights against JOL without the consent of JOL. Defendant/Third-Party Plaintiff ITC's Response To Third-Party Defendant JOL's Motion To Dismiss (Doc. #53) at 9. Instead, ITC asks the Court to disregard Zhou's entire declaration because his LinkedIn page lists his employment as "Sales Director" at Boly Pipe from December of 2023 to the present, while his declaration states that he is Marketing Manager of JOL. The LinkedIn page is an unsworn screen shot, which is hearsay, and the dates are in Chinese. Also, the LinkedIn page headline represents Zhou's title as Marketing Manager at JOL. While the record is not entirely clear about where Zhou worked and when, it provides no reason to question his personal knowledge of the Purchase Order from CSP

---

[1] ITC's third-party complaint does not claim that CSP had assignable warranty rights which originate in sources other than the Purchase Order.

to JOL.[2] ITC does not raise a genuine issue of material fact with regard to the Zhou declaration or otherwise controvert the facts declared therein. The Court therefore finds that the Purchase Order from CSP to JOL, and any warranty rights contained therein, were not assignable without the permission of both the parties. Apart from the purported assignment, ITC does not allege other bases on which to seek express contractual indemnity from JOL. Stated otherwise, ITC has not alleged facts or provided evidence that it has standing to sue JOL to enforce contractual indemnity terms to which JOL did not expressly agree. Therefore, the third-party complaint does not raise an express contractual indemnification claim over which the Court can exercise subject matter jurisdiction.

B.   Implied Contractual Indemnity

An implied contractual indemnity claim "usually arises when one personally, without fault, is made to pay for a tortious act of another." Haysville, 233 Kan. at 642, 666 P.2d at 199; see Med James, Inc. v. Barnes, 31 Kan. App. 2d 89, 99, 61 P.3d 86, 94 (2003) (weighing of relative fault of parties does not apply to implied contractual indemnity because one seeking indemnity must be without fault). Implied contractual indemnity is generally used in cases involving employer/employee relationships, but Kansas has not limited implied contractual indemnity to those relationships. See Unified Sch. Dist. 467 v. Leland A. Gray Architects, LLC, 112 F. Supp. 3d 1223 (D. Kan. 2015). Implied contractual indemnity can be asserted as a tort claim without an express contract, though plaintiff must allege sufficient facts to support a plausible claim of privity

---

[2] The Purchase Order is addressed to Zhou, and Boly Pipe and JOL appear to be related as subsidiary and parent companies: Boly Pipe's web site describes JOL as its Houston Branch. Even if Zhou worked at Boly Pipe instead of JOL at the time of the Purchase Order, that fact does not provide a reason to doubt Zhou's personal knowledge of the Purchase Order. The Third-Party Complaint (Doc. #32) filed July 15, 2025, alleges in ¶ 4 that "JOL is an agent, instrumentality, and authorized representative of Boly and/or is owned and controlled by Boly." This allegation is uncontradicted and the Court assumes that it is true.

between the parties. Id. In Unified Sch. Dist., a general contractor plausibly alleged a claim for implied contractual indemnification against a manufacturer of HVAC equipment. The general contractor alleged that (1) the manufacturer was involved in the "design and installation" and the "inspection and service" of HVAC systems and had made certain promises and affirmations in connection with the sale of the equipment and (2) the general contractor had purchased the HVAC units from the manufacturer's authorized dealer. Id. See also UMB Bank, N.A. v. Monson, No. 21-CV-2504-EFM-KGG, 2023 WL 5956276, at *3 (D. Kan. Sept. 13, 2023), decision clarified on reconsideration, No. 21-CV-2504-EFM-KGG, 2023 WL 8761604 (D. Kan. Dec. 19, 2023). These allegations established that the parties had a close enough relationship to plausibly establish privity, which a claim of implied contractual indemnity requires.

ITC does not allege that it had a direct relationship with JOL. ITC alleges a one-time pipe sale from JOL to CSP and then from CSP to ITC. ITC alleges that JOL and Boly Pipe "represented to ITC that before leaving Boly's mill, the Casing Pipe had been manufactured, inspected, and tested under the standards of the American Petroleum Institute." Third-Party Complaint (Doc. #32) at ¶ 14. This single representation, outside of any express contractual relationship, is not sufficient to state a plausible claim for an implied contract. Therefore, ITC has not sufficiently stated an implied contractual indemnity claim.

C. Comparative Implied Indemnity

Comparative implied indemnity is an equitable remedy available to a single defendant, among a number of tortfeasors, who by settling with plaintiff or paying a judgment, pays the other tortfeasors' share of liability. Schaefer v. Horizon Bldg. Corp., 26 Kan. App. 2d 401, 403, 985 P.2d 723, 725 (1999).

Here, ITC does not specifically characterize JOL's acts as tortious, but it alleges facts

which suggest tortious conduct.  See Philadelphia Indemnity Ins. Co. v. Midwest Steel Fab, LLC, No. 19-1026-EFM, 2021 WL 2711152, at *5 (D. Kan. Jul. 1, 2021).  ITC alleges that as manufacturer and vendor of the pipe, Boly Pipe and JOL would be responsible for any defects. Third-Party Complaint (Doc. #32) at ¶ 22.  Though plaintiff only seeks to recover from ITC, the complaint suggests comparative fault between ITC, CSP, JOL and/or Boly Pipe as to potential product liability concerning the pipe.  See MWCB Rock Road, LLC v. C&W Facility Services, Inc., No. 21-1022-SAC-GEB, 2022 WL 168221, at *4 (D. Kan. Jan. 19, 2022).  Accordingly, ITC might be held liable for the fault of other tortfeasors.  ITC has alleged injury in fact that is fairly traceable to JOL and satisfies its standing requirements for subject matter jurisdiction.  To the extent ITC advances a comparative implied indemnity claim, JOL's motion to dismiss makes no argument that the Court lacks subject matter jurisdiction over it.  The Court therefore overrules JOL's motion in regard to standing.

        D.        Ripeness

The Court's jurisdiction extends only to live cases or controversies that are ripe for judicial review.  Garcia v. Bd. of Educ., 520 F.3d 1116, 1123 (10th Cir. 2008); Kansas Jud. Rev. v. Stout, 519 F.3d 1107, 1116 (10th Cir. 2008).  Ripeness is a justiciability doctrine designed to prevent courts from entangling themselves in abstract disagreements by premature adjudication.  See National Park Hospitality Association v. Dept. of Interior, 538 U.S. 803, 807 (2003).  To determine whether the issues in a case are ripe for review, courts evaluate the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.  Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967), overruled on other grounds by Califano v. Sanders, 430 U.S. 99 (1977).  Whether a case is fit for judicial resolution depends on whether it involves uncertain or contingent future events that may not occur.  Morgan v. McCotter, 365 F.3d 882, 890 (10th Cir.

2004).

JOL argues that ITC's claim is not ripe for adjudication because no injury subject to indemnification has occurred and ITC would suffer no hardship if it had to withhold its indemnification claim until after plaintiff's claims are resolved. ITC responds that because it may be liable to plaintiff and JOL may be required to indemnify it, its claim is ripe.

Under Fed. R. Civ. P. 14(a)(1), which provides the mechanism for ITC's third-party claim, "a defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or **may** be liable to it for all or part of the claim against it." (emphasis added). One of the primary objectives of third-party procedure is to avoid circuity and multiplicity of actions. King Fisher Marine Serv., Inc. v. 21st Phoenix Corp., 893 F.2d 1155, 1168 (10th Cir. 1990). At the same time, the Federal Rules of Civil Procedure do not create or withdraw federal jurisdiction. See Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 370 (1978). Therefore the Court must determine ripeness using the factors described in Abbott; (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration. Abbott Labs, 387 U.S. 136, 149.

The Court finds that ITC's indemnity claim is sufficiently ripe, since in the event that ITC is found liable to plaintiff, ITC may recover from Boly Pipe or JOL as manufacturer and vendor of the pipe. Further, withholding judicial consideration would present an unwarranted hardship on the parties and lead to judicial inefficiency if ITC had to litigate its claims against JOL in a second lawsuit. See Cooper v. City of Gallup, NM, No. CV 1:24-504 MIS/GJF, 2025 WL 1664296, at *8 (D.N.M. June 12, 2025).

Third-party indemnity claims which are contingent on the outcome of the underlying action are not uncommon in Kansas courts. See e.g. MWCB Rock Road, LLC v. C&W Facility Services,

Inc., No. 21-1022-SAC-GEB, 2022 WL 168221, at *4 (D. Kan. Jan. 19, 2022); United of Omaha Life Ins. Co. v. Reed, 649 F. Supp. 837, 842 (D. Kan. 1986); Comeau v. Rupp, 762 F. Supp. 1434, 1438 (D. Kan. 1991). The Court therefore determines that ITC's indemnification claim is ripe.

In summary, JOL has not presented a persuasive factual or legal basis for its argument that the Court lacks subject matter jurisdiction. On that issue, its motion is overruled.

## II.   12(b)(2) Personal Jurisdiction

JOL argues that the Court lacks personal jurisdiction over it. ITC responds that it has made a prima facie showing of personal jurisdiction and alternatively seeks leave to conduct jurisdictional discovery to ascertain if JOL has directed its efforts to Kansas residents.

For the Court to exercise personal jurisdiction in a diversity action, plaintiff must show that personal jurisdiction is proper under the laws of the forum state and that exercising jurisdiction comports with the due process requirements of the United States Constitution. See Newsome v. Gallacher, 722 F.3d 1257, 1264 (10th Cir. 2013). The Kansas long-arm statute permits the exercise of any jurisdiction that is consistent with the United States Constitution. See Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop., 17 F.3d 1302, 1304–05 (10th Cir. 1994); see also K.S.A. § 60-308(b)(1)(L). Accordingly, the Court need not conduct a separate personal jurisdiction analysis under Kansas law and instead may proceed directly to the due process inquiry. See Niemi v. Lasshofer, 770 F.3d 1331, 1348 (10th Cir. 2014) (where long-arm statute confers maximum jurisdiction consistent with Due Process Clause, statutory inquiry effectively collapses into constitutional analysis). The due process analysis requires the Court to determine (1) whether defendant has "minimum contacts with the forum state such that [they] should reasonably anticipate being hailed into court there" and (2) if defendant's actions establish minimum contacts, whether the exercise of personal jurisdiction over it "offends traditional notions of fair play and

substantial justice." AST Sports Sci., 514 F.3d at 1057. To satisfy the "minimum contacts" standard, plaintiff can establish that the Court has either (1) specific jurisdiction or (2) general jurisdiction. Rockwood Select, 750 F.3d at 1179. The Court has specific jurisdiction if defendant "purposely directed" its activities at residents of the forum state, and plaintiff's alleged injuries "arise out of" the forum-related activities. Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1071 (10th Cir. 2008). The aim of the "purposeful direction" doctrine is to ensure that defendant is not bound to appear to account for merely "random, fortuitous, or attenuated contacts" with the forum state. Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). The Court may exercise general personal jurisdiction if defendant otherwise maintains "continuous and systematic" general business contacts with Kansas. OMI Holdings, Inc. v. Royal Ins. Co. of Can., 149 F.3d 1086, 1090–91 (10th Cir.1998).

Here, ITC has not alleged prima facie grounds for personal jurisdiction over JOL. In arguing otherwise, ITC points to paragraphs 7 and 8 of the Third-Party Complaint (Doc. #32). Those paragraphs allege that JOL "executed or facilitated the transaction" between Boly Pipe and CSP (the entity which sold ITC the pipe and delivered it to plaintiff in Kansas). ITC argues that in so doing, JOL "purposefully availed itself of the opportunity to send products into the state of Kansas, where they could cause damage and injury." Factually, ITC alleges that JOL sold pipe to CSP, which sold it to ITC, which sold it to plaintiff for delivery in Kansas. ITC does not otherwise allege how JOL "executed or facilitated" the transaction in question.

ITC's conclusory recitation does not make a prima facie showing of personal jurisdiction. ITC does not allege specific facts that would support a conclusion that JOL purposefully directed any activities to residents of Kansas. The record suggests that JOL (a Texas corporation) sold pipe to CSP (another Texas corporation) and delivered it to Texas. CSP sold the pipe to ITC (an

Oklahoma corporation), which sold it to plaintiff (a Kansas corporation). These facts fall far short of showing that JOL purposely directed its activities to a Kansas resident. On this record, JOL's contact with Kansas must be viewed as "random, fortuitous, or attenuated." See Dudnikov 514 F.3d 1063, 1071 (10th Cir. 2008). The Court therefore concludes that ITC has not sufficiently alleged facts that would enable the Court to exercise personal jurisdiction over JOL.

### III.    Jurisdictional Discovery

If the Court determines that it did not allege a prima facie case of personal jurisdiction, ITC seeks leave to conduct jurisdictional discovery to ascertain if Boly Pipe or JOL directed activity to residents of Kansas.

When defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on factual issues raised by the motion. See Sizova v. Nat'l Inst. of Stds. & Tech., 282 F.3d 1320, 1326 (10th Cir. 2002). The Court, however, is vested with broad discretion in deciding whether to allow discovery. See TH Agric. & Nutrition, LLC v. Ace European Group Ltd., 416 F. Supp.2d 1054, 1073 (D. Kan. 2006). The Court abuses its discretion if the denial of discovery results in prejudice to plaintiff. See Sizova, 282 F.3d at 1326. Such prejudice exists where "pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary." Id. (quotation and citation omitted).

Here, the record has limited facts concerning JOL's efforts to sell products to residents of Kansas. Out of an abundance of caution, the Court will therefore sustain ITC's request for limited jurisdictional discovery.

### IV.    12(b)(6) Failure To State A Claim

Since the Court cannot exercise personal jurisdiction over JOL, the Court need not consider JOL's argument that ITC's third-party complaint is deficient under Rule 12(b)(6). See Creamer,

2015 WL 6828186, at *2 (D. Kan. Nov. 6, 2015).

V.      Leave To Amend Third-Party Complaint

If the Court finds that dismissal is appropriate, ITC seeks leave to amend. <u>Defendant/Third-Party Plaintiff ITC's Response To Third-Party Defendant JOL's Motion To Dismiss</u> (Doc #53) at 12. The Court disregards any motion or request to amend which does not comply with District of Kansas Rule 15.1(a). Under that rule, a party filing a motion to amend that may not be filed as a matter of right must (1) set forth a concise statement of the amendment or leave sought; (2) attach the proposed pleading or other document; and (3) attach a redlined version of the proposed amendment that shows all proposed changes to the pleading. D. Kan. Rule 15.1(a); <u>see</u> <u>Requena v. Roberts</u>, 893 F.3d 1195, 1204 n.3 (10th Cir. 2018) (insufficient to merely suggest that party should be allowed to amend if judge finds pleadings deficient; party must file written motion for leave to amend, giving adequate notice of basis of proposed amendment). Though ITC explains that it seeks leave to add CSP as a third-party defendant, it has not satisfied the other two requirements. The Court therefore overrules its request to amend the third-party complaint.

**IT IS THEREFORE ORDERED** that <u>Third-Party Defendant JOL Tubular Inc.'s Motion To Dismiss</u> (Doc. #48) filed September 10, 2025 is **OVERRULED as to subject matter jurisdiction.** As to personal jurisdiction, the Court **conditionally SUSTAINS** the motion. **The Court orders that ITC show good cause in writing, no later than 5:00 PM on January 20, 2026, why its claims against JOL should not be dismissed for lack of personal jurisdiction. In the interim, ITC may conduct discovery on that issue.**

Dated this 18th day of November, 2025 at Kansas City, Kansas.

/s/ Kathryn H. Vratil
KATHRYN H. VRATIL

-15-

_____
United States District Judge